IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:24-CR-127-TAV-JEM |
| | ) | |
| DAMON WARZELL DAVIS, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This case is before the undersigned for report and recommendation on Defendant Damon Warzell Davis's Motion to Dismiss Indictment for Violation of the Second Amendment [Doc. 27]. *See* 28 U.S.C. § 636(b). Defendant is charged with a single count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) [Doc. 3 p. 1]. The Indictment further alleges that prior to this offense, Defendant had at least three prior qualifying convictions "committed on occasions different from one another" in violation of 18 U.S.C. § 924(e)(1) [*Id.*].

Defendant asks the Court to dismiss the charge arguing the Indictment fails to state an offense as to him because he was not "dangerous" at the time he allegedly possessed a firearm [Doc. 27 pp. 1, 7–8]. Defendant contends that his prior convictions for aggravated burglary do not show him to be dangerous because they occurred more than a decade ago; are property crimes, not violent offenses [*id.* at 7–8]; and did not pose a risk of injury because the occupants of the residences were not home [Doc. 49 pp. 5–8]. He also asserts that the Court should not consider uncharged conduct in assessing dangerousness [*Id.* at 12–17]. Finally, Defendant objects to the Sixth Circuit's decision in *United States v. Williams*, 113 F.4th 637 (6th Cir. 2024), and argues that § 922(g)(1) unconstitutionally contravenes his Second Amendment right to possess a firearm in self-defense [Doc. 27 pp. 1, 9–17].

The Government responds that the Court is bound by the *Williams* decision and that under the test from *Williams*, Defendant's prior convictions and other unlawful conduct show him to be dangerous [Doc. 34 pp. 1, 4; Doc. 52 pp. 1, 3–4, 6].

The undersigned finds that Defendant's full criminal record shows him to be dangerous. Defendant's nine prior convictions for aggravated burglary and the facts underlying these convictions show that he is dangerous. While the undersigned need not consider uncharged conduct to reach this conclusion, Defendant's prison infractions and pending DUI charge, along with Defendant's domestic assault convictions, further support the finding that he is dangerous. The undersigned also finds that the Court is bound by *Williams* as to the constitutionality of § 922(g)(1) and the standard for determining whether a defendant is dangerous such that his Second Amendment rights may be curtailed. For these reasons, the District Judge should **DENY** Defendant's motion to dismiss the charge [Doc. 27].

## I. BACKGROUND

Defendant stands charged in a one-count Indictment with being a felon in possession of a firearm after having at least three prior felony convictions [Doc. 3 p. 1]. Specifically, the Grand Jury alleges that on or about April 10, 2024, Defendant, knowing that he had previously been convicted of a felony, did knowingly possess a firearm in and affecting interstate commerce in violation of 18 U.S.C. § 922(g)(1) [*Id.*]. "The Grand Jury further alleges that, before the defendant committed this offense, the defendant had at least three prior convictions for offenses qualifying under 18 U.S.C. § 924(e)(2) that were committed on occasions different from one another, in violation of § 924(e)(1)" [*Id.*].[1]

---

[1]     Defendant also moved to dismiss the charge for a Fifth Amendment due process violation arguing the Armed Career Criminal Act's different occasions clause in 18 U.S.C. § 924(e)(1) is unconstitutionally vague [Doc. 26]. At the September 24, 2025 motion hearing, defense counsel

Defendant contends his § 922 (g) charge should be dismissed for failure to state an offense [Doc. 27 p. 1]. He claims that at the time he allegedly possessed a firearm, he was not "dangerous" because his prior convictions are more than a decade old and are property offenses, not violent offenses [*Id*. at 7–8]. He maintains, therefore, that he is not subject to § 922(g)(1), and he requested an evidentiary hearing to show that he is not dangerous [*Id*. at 7]. Defendant also asserts a facial challenge to the constitutionality of § 922(g)(1), raising various arguments in support of his position that the Court of Appeals wrongly decided *United States v. Williams*, 113 F.4th 637 (6th Cir. 2024) [Doc. 27 pp. 9–17]. Defendant criticizes *Williams*'s analysis of historical analogues [*id*. at 9–14], its failure to define the term "dangerous" [*id*. at 14–16], and alleged procedural problems created by the dangerousness test [*id*. at 16–19].

The Government opposes the assertion that Defendant is not currently dangerous, as well as his request for a hearing [Doc. 34 pp. 1, 3]. It argues Defendant's nine prior convictions for aggravated assault alone show that he is dangerous because they fall into the second *Williams* category of crimes that inherently pose a significant threat of danger [*Id*. at 3]. As to Defendant's challenge to the *Williams* decision, the Government contends the Court is bound by *Williams* unless and until that decision is overturned by the Sixth Circuit en banc or the Supreme Court [*Id*. at 4].

### A.     September 24, 2025 Evidentiary Hearing

The parties appeared for an evidentiary hearing on September 24, 2025 [Doc. 39]. Assistant United States Attorney Miriam Johnson appeared on behalf of the United States, and Assistant

---

stated that this motion was premature and perhaps more appropriately addressed after the proof at trial [Doc. 44, Transcript, p. 5]. The parties agreed that the undersigned should hold this motion in abeyance for determination by the District Judge closer in time to the trial [*Id*. at 62–65]. After consideration of the parties' representations and upon consultation with the District Judge, the undersigned held the motion in abeyance and directed the parties to notify the undersigned immediately if a hearing is needed on the motion [Doc. 42 p. 2]. As of the date of this Report and Recommendation, neither party has requested a hearing on the motion.

Federal Defenders Sarah H. Olesiuk and Erin Rust represented Defendant, who also appeared [Doc. 44, Transcript p. 4].

Ms. Olesiuk reasserted Defendant's disagreement with *Williams*'s placing the burden on Defendant to show he is not dangerous [*Id*. at 6]. Recognizing, that *Williams* places that burden with Defendant, however, she called Kristy Davis as a witness [*Id*. at 6–7]. Ms. Davis testified that she lives in Wartburg, Tennessee, and works as a nurse in Knoxville, Tennessee [*Id*. at 8]. She said Defendant is her boyfriend, they have been in a relationship since March 2023, and they have a child who was born in December 2023 [*Id*.]. Ms. Davis said she knew of Defendant's prior felony convictions at the time they began their relationship [*Id*.]. She denied ever feeling unsafe around Defendant, nor has she seen him behave violently toward anyone [*Id*. at 8–9]. Ms. Davis said she has no reservations about Defendant carrying for and being alone with their child and her thirteen-year-old son [*Id*. at 9]. She described Defendant as an "excellent father" [*Id*.]. Ms. Davis testified that prior to Defendant's arrest on the current charge, he worked in Knoxville during the week and cared for the children on the weekend while she worked [*Id*. at 9–10]. She had no concerns about Defendant caring for the children, nor has she ever seen him with a firearm [*Id*. at 10].

On cross-examination, Ms. Davis stated she has known Defendant since the end of February 2023 [*Id*.]. She said Defendant told her that he entered guilty pleas to breaking into residences in 2010 [*Id*. at 11]. She also knew he was not allowed to possess firearms [*Id*.]. She denied being aware that he was reprimanded while in prison for possessing "prison knives" or "shanks" [*Id*.]. She said it was not dangerous to possess a knife while in prison and stated she "probably would have one, too" because prison is a dangerous place [*Id*. at 11–12].

Ms. Olesiuk introduced police reports [Exh. 1–9] that correspond to Defendant's nine Tennessee judgments of conviction, which are attached to the Government's response [Docs. 34-

4

1 to 34-9]. Exhibit 1 is a Memphis Police Department ("MPD") Incident Report concerning a residential burglary investigation from August 4, 2010 [Doc. 44 p. 14; *see* Doc. 34 p. 1 (judgment for aggravated burglary with offense date of August 14, 2010)].[2] Ms. Olesiuk highlighted that the incident involved no weapon, no force, no hostage, and no injuries [Doc. 44 p. 14]. The report states that Defendant was twenty-five years old at the time of this offense and was not affiliated with a gang [*Id*.]. The report's narrative relates that the burglary occurred during the day while the homeowner was not home [*Id*. at 14–15].

Ms. Olesiuk presented Exhibit 2, which is an MPD Incident Report for a residential burglary on September 1, 2010 [Doc. 44 p. 15; *see* Doc. 34 p. 2 (judgment for aggravated burglary with Sept. 1, 2010 offense date)]. She highlighted that Exhibit 2 shows no hostage, no weapon, no force, and no injuries were involved in the burglary of a residence [Doc. 44 p. 15]. The report shows Defendant was twenty-five years old and not in a gang [*Id*.]. The narrative states that the burglary occurred during the daytime while no one was home [*Id*.].

Defendant's Exhibit 3 is an MPD Incident Report of a residential burglary on September 2, 2010 [*Id*.; Doc. 34 p. 3 (judgment for aggravated burglary with Sept. 2, 2010 offense date)]. Defense counsel pointed out that this incident involved no hostage, no weapon, no force, and no injuries [Doc. 44 p. 15]. Defendant was twenty-five years old and not in a gang [*Id*.]. Ms. Olesiuk said the report was made at 12:40 p.m., and the victim reports her home was burglarized earlier that day [*Id*.].

Defendant's Exhibit 4 is an MPD Incident Report for a residential burglary on September 9, 2010 [*Id*.; Doc. 34 p. 4 (judgment for aggravated burglary with Sept. 9, 2010 offense date)].

---

[2]     The offense date from the state judgment [Doc. 34-1 p. 3] does not match the offense date on the Incident Report [Exh. 3]; however, the initials of the victim in the state-court judgment are the same as the victim listed in the Incident Report.

Ms. Olesiuk highlighted that this incident involved no hostage, no weapons, no force, and no injuries to either victim [Doc. 44 p. 15]. Defendant was twenty-five years old at the time of this offense and was not in a gang [*Id.*]. The narrative states that officers responded shortly after 1:00 p.m., showing the offense occurred in the daytime [*Id.*].

Ms. Olesiuk provided Exhibit 5, which is an MPD report of a residential burglary on September 15, 2010 [*Id.* at 15–16; Doc. 34 p. 5 (judgment for aggravated burglary with Sept. 15, 2010 offense date)]. She stated that the report reflects the incident involved no hostage, no weapon, no force, and no injuries [*Id.*]. Again, the report states that Defendant was twenty-five years old and not in a gang [*Id.*]. According to Ms. Olesiuk, the narrative shows the burglary occurred during the day when no one was home [*Id.* at 15–16].

Defendant's Exhibit 6 is an MPD Incident Report from a residential burglary on September 20, 2010 [*Id.* at 16; Doc. 34 p. 6 (judgment for aggravated burglary with Sept. 20, 2010 offense date)]. This incident also involved no hostage, no weapon, no force, and no injuries [*Id.*]. The report also reflects that Defendant was twenty-five years old and not in a gang [*Id.*]. Ms. Olesiuk pointed out that the narrative states a runner spotted the burglary in progress while no one was home [*Id.*]. According to defense counsel, Defendant did not "engage with" the runner but, instead, fled the scene [*Id.*].

Ms. Olesiuk presented Defendant's Exhibit 7, which is a Shelby County Sheriff's Department ("SCSD") Incident Report from a residential burglary on September 21, 2010 [*Id.*; Doc. 34 p. 7 (judgment for aggravated burglary with Sept. 21, 2010 offense date)]. This burglary also involved no hostage, no weapon, no force, and no injuries [Doc. 44 p. 16]. Defendant was twenty-five years old and was not in a gang [*Id.*]. Ms. Olesiuk noted that this offense occurred during the daytime when no one was home [*Id.*].

6

Defendant's Exhibit 8 is a SCSD Incident Report of a residential burglary on September 21, 2010 [*Id.*; Doc. 34 p. 8 (judgment for aggravated burglary with Sept. 21, 2010 offense date)]. Defense counsel highlighted that this burglary involved no hostage, no weapon, no force, and no injuries [*Id.*]. The report reflects that Defendant was twenty-five years old and not in a gang [*Id.*]. Ms. Olesiuk stated this burglary also happened during the day while no one was home [*Id.*].

Ms. Olesiuk also presented Exhibit 9, which is an MPD Incident Report of felony vandalism at a residence on August 16, 2010 [*Id.* at 16–17; Doc. 34 p. 9 (judgment for aggravated burglary with Aug. 21, 2010 offense date)].[3] She stated the report shows that no hostage, weapon, force, or injuries were involved in this offense [Doc. 44 pp. 16–17]. The report states Defendant was twenty-five years old and was not in a gang [*Id.* at 17]. Ms. Olesiuk highlighted that the narrative from Exhibit 9 states that the incident occurred after the residents left the house in the morning and before they returned home for lunch [*Id.*].[4]

Ms. Olesiuk argued that Defendant garnered no charges other than aggravated burglary from these nine incidents even though Tennessee has an especially aggravated burglary offense for breaking and entering a residence resulting in serious bodily injury [*Id.*].

Defendant also presented the body camera video footage from Defendant's April 10, 2024 traffic stop and subsequent arrest for the charged offense of being a felon in possession of a firearm

---

[3] Here, the offense date, type of offense, and initials of the victim in the state judgment [Doc. 34-1 p. 9] do not match the offense date, offense, or victim listed in the Incident Report [Exh. 9].

[4] The narrative from Exhibit 9 states the perpetrator damaged the door and triggered the alarm [Exh. 9 p. 5]. The report does not state that anything was taken from the residence [*Id.* at 2, 5].

[*Id*. at 17–18; Exh. 17 p. 50].[5] According to defense counsel, Knox County Sheriff's Officer James Dudley, Jr., stopped Defendant's vehicle for a suspected window tint violation [Doc. 44 p. 19; Exh. 17 p. 50]. Ms. Olesiuk played portions of the video recording showing Defendant was compliant with the officer's instructions, the officer did not place Defendant or his passenger in handcuffs or in the cruiser despite being the only officer on the scene, and the officer left Defendant standing in front of the cruiser while the officer was sitting in the cruiser [*Id*. at 19–20; Exh. 17 p. 50]. Defense counsel states that Deputy Dudley's K-9 alerted on Defendant's vehicle and officers seized a small amount of marijuana and an "inoperable," unloaded handgun [Doc. 44 p. 20; Exh. 17 p. 50]. The video shows the officer arrested Defendant without incident [Doc. 44 pp. 20–21; Exh. 17 p. 50].

Defendant also introduced the Knox County Sheriff's Office ("KCSO") report from Defendant's April 10, 2024 arrest [Doc. 44 p. 21; Exh. 11]. This report states that an officer seized three and one-half grams of marijuana from the backseat of Defendant's vehicle on the driver's side and an unloaded 9-millimeter firearm from beneath the driver's seat [Doc. 44 p. 21; Exh. 11].[6] The report also states that a records check during the stop revealed Defendant to be a convicted felon [Doc. 44 p. 21; Exh. 11].

Defendant presented a recorded jail telephone call in which Defendant, when asked about the gun seized by police, stated that he is homeless and had an unloaded gun in his vehicle for protection [Doc. 44 p. 22; Exh. 12]. Defense counsel proffered that at the time of the stop,

---

[5]   Defendant introduced the entire fifty-six-minute video as Exhibit 10. The clips played for the Court are embedded in defense counsel's power point presentation, which was admitted as Exhibit 17.

[6]   The narrative from the KCSO report also states that upon approaching Defendant's vehicle and making contact with Defendant, the officer "immediately smelled the odor of Marijuana emitting from the vehicle" and that Defendant "removed a Marijuana roach from his pocket" while standing outside the vehicle [Exh. 11 p. 1].

Defendant was "functionally" homeless because he occasionally stayed in motels and slept in his car when he could not afford a motel room [Doc. 44 pp. 21–22]. Finally, Defendant introduced the KCSO IBIS Firearm Worksheet [Doc. 44 p. 22; Exh. 13]. This report states the gun seized from Defendant's vehicle had an empty magazine, was "not functional as received," and the officer used a "frame from the reference collection" to fire the gun [Doc. 44 p. 22; Exh. 13].

AUSA Johnson stated that the nine judgments for aggravated burglary show Defendant to be dangerous [Doc. 44 p. 25; Doc. 34-1 pp. 1–9]. Defendant received a suspended sentence of ten years in prison with a term of probation for each aggravated burglary conviction [Doc. 34-1 pp. 1–9]. On February 25, 2014, the state judge revoked the suspension of Defendant's sentence and confined him in the Tennessee Department of Corrections ("TDOC") [Doc. 34-1 p. 10]. The Government also presented documentation that TDOC released Defendant on January 3, 2023, after expiration of his thirteen-year sentence for nine aggravated burglary convictions and two attempted aggravated burglary convictions [Doc. 44 pp. 25–26; Doc. 34-1 p. 11].

The Government introduced a collective exhibit of Defendant's disciplinary infractions while incarcerated [Doc. 44 p. 26; Exh. 14]. AUSA Johnson highlighted that on December 19, 2015, Defendant possessed .3 ounces of marijuana while in prison [Doc. 44 p. 26; Exh. 14 pp. 3–4]. The prison deducted four dollars from Defendant's prison account as punishment for this infraction [Doc. 44 p. 27; Exh. 14 p. 2]. AUSA Johnson also pointed out that during a search of Defendant's cell on November 13, 2016, Defendant was found with a bag of marijuana and two bags of tobacco [Doc. 44 p. 27; Exh. 14 p. 9]. As punishment for this offense, the prison deducted four dollars from Defendant's account [Doc. 44 p. 27].[7] On June 27, 2018, officers located less

---

[7] As later noted by Defendant [Doc. 49 p. 2 n.1], he also served six days in segregation for this offense [Exh. 14 pp. 8–9].

9

than one gram of methamphetamine in Defendant's cell, and Defendant admitted the substance was his [*Id*.; Exh. 14 p. 14]. Defendant received a drug screen on July 2, 2018, and tested positive [Doc. 44 pp. 27–28; Exh. 14 p. 16]. AUSA Johnson stated that on August 30, 2018, Defendant received an infraction for soliciting a guard to bring marijuana and tobacco into the prison [*Id*. at 28; Exh. 14 pp. 20–21]. For this infraction, the prison deducted another $4 from Defendant's account [Doc. 44 p. 28]. Finally, AUSA Johnson stated that Defendant and his cellmate both received infractions for possessing two sharpened prison knives, one seven-and-one-half inches long and one eight-inches long, in their cell [Doc. 44 p. 28; Exh. 14 p. 25]. Defendant was fined a five-dollar deduction from his prison account for this infraction [Doc. 44 p. 28; Exh. 14 p. 25].[8]

The Government also presented a collective exhibit of five reports of Defendant's encounters with law enforcement between July 2023 through October 2024 [Doc. 44 p. 29; Exh. 15].[9] The first encounter occurred on July 20, 2023, when Knoxville Police Department ("KPD") officers responded to a 911 call for a domestic disturbance [Doc. 44 p. 29; Exh. 15 p. 3]. The victim reported that Defendant choked her and slammed her into a dresser, but Defendant denied assaulting the victim [Doc. 44 p. 29; Exh. 15 p. 3]. Officers did not determine a primary aggressor and did not arrest anyone [Doc. 44 p. 29; Exh. 15 p. 3].

The second KPD report states that in the early morning of August 17, 2024, officers responded to a 911 call regarding simple assault where individuals were intoxicated and fighting [Doc. 44 p. 30; Exh. 15 pp. 4, 7]. AUSA Johnson described the report as stating that "a woman

---

[8]     Exhibit 14 reflects that Defendant also received twenty-nine days of segregation during the investigation, pending the disciplinary hearing, and as punishment for this offense [Exh. 14 pp. 24–25]. As noted by Defendant [Doc. 49 p. 2 n.1], the final six days are listed as "punitive segregation" [Exh. 14 p. 25].

[9]     The undersigned numbers the pages of this collective exhibit consecutively in order to reference specific pages.

threw a shoe at [Defendant] and that [Defendant] pushed her in self-defense [Doc. 44 p. 30; Exh. 15 p. 7]. AUSA Johnson stated that the officer thought Defendant was the primary aggressor, that he argued with the officers, and that he had the odor of alcohol on his person [Doc. 44 p. 30; Exh. 15 p. 7]. The report states that before the officer left Defendant and the woman hugged, apologized, and went inside [Doc. 44 p. 30; Exh. 15 p. 7]. AUSA Johnson stated that no one was arrested following this incident [Doc. 44 p. 30]

The third KPD report is from later that same day, August 17, 2024, around 2:10 p.m. [*Id.*; Exh. 15 p. 8]. Defendant was involved in an automobile accident with an Uber driver and Defendant left the scene after telling the other party he did not have insurance [Doc. 44 p. 30–31; Exh. 15 p. 11]. The report states a records check revealed that Defendant had a suspended driver's license [Exh. 15 p. 11].

The fourth KPD report is from September 30, 2024 [Doc. 44 p. 31; Exh. 15 p. 12]. An officer stopped Defendant's vehicle around 10:30 p.m. for a malfunctioning headlight [Doc. 44 p. 31; Exh. 15 p. 14]. As the officer approached the vehicle, he smelled the odor of marijuana [Doc. 44 p. 31; Exh. 15 p. 14]. A drug detection dog alerted on Defendant's vehicle [Doc. 44 p. 31; Exh. 15 p. 16]. Officers searched Defendant's vehicle and found a small bag containing 2.5 grams of marijuana and multiple packages with marijuana residue [Doc. 44 p. 31; Exh. 15 p. 14, 16]. The officers issued Defendant a citation [Doc. 44 p. 31; Exh. 15 p. 16].

The fifth KPD report is from October 3, 2024 [Doc. 44 p. 31; Exh. 15 p. 17]. Officers responded to an automobile crash and found Defendant had knocked a fire hydrant off its base and drove his vehicle into a ditch [Doc. 44 p. 31; Exh. 15 pp. 18–19]. The officers smelled alcohol on Defendant's breath, his speech was slurred, and he was unsteady on his feet [Doc. 44 p. 31–32; Exh. 15 pp. 18–19]. Defendant did not follow instructions on field sobriety tests and was arrested

11

for DUI [Doc. 44 p. 32; Exh. 15 pp. 17–19]. The Government presented a Tennessee Bureau of Investigation ("TBI") report, which states that Defendant's blood sample from the time of the October 3, 2024 offense had a blood-alcohol content of 0.16 [Doc. 44 p. 32; Exh. 16]. AUSA Johnson stated this amount is "twice the legal limit" for DUI [Doc. 44 p. 32].

In response to collective Exhibit 14, Defendant pointed out that the prison disciplinary reports show that Defendant's infractions involved no violence and no injuries to others and the infractions involving drugs were for possession not sale [*Id*. at 33–35; Exh. 14 pp. 1, 3–4, 6, 8–9, 11, 13, 16, 18, 22 & 24]. Defendant asserted that the disciplinary report related to the two knives reveals the knives were not used, and both knives could have belonged to Defendant's cellmate [Doc. 44 p. 35]. Defendant also points out the disciplinary records do not show that he engaged in fighting during the nine years he was in prison [*Id*. at 37].

Regarding Exhibit 15 and the July 2023 police report, Defendant emphasized that the report states the female may have self-inflicted the visible wound and that no one was arrested [*Id*. at 35]. Regarding the remaining reports, defense counsel highlighted that no convictions resulted from the incidents and that all the conduct is after the charged offense in this case [*Id*.].

At the close of proof, Defendant argued that his judgments of conviction for aggravated burglary are not sufficient to show that he is dangerous [*Id*. at 39]. He asserted that if the second category from *Williams*, which includes burglary and drug-trafficking offenses, creates a presumption of dangerousness, then that presumption can be rebutted [*Id*.]. But, according to Defendant, *Williams* does not provide factors or a test to guide the analysis for rebutting the presumption [*Id*. at 42]. Analogizing to the factors considered when determining if extraordinary reasons exist for conditional release after a guilty plea, Defendant argued that one way to rebut the presumption that an offense is violent is to show that the underlying facts demonstrate no violence

12

in the commission of the offense [*Id*. at 41 (citing *United States v. Garcia*, 340 F.3d 1013 (9th Cir. 2003))]. Defendant argued that statistically most burglaries do not involve a violent interaction even when someone is home [*Id*. at 39–40]. Thus, Defendant maintained the facts underlying the burglaries here—that they were committed during the day when no one was home and no injuries occurred—rebut the presumption of dangerousness from *Williams* [*Id*. at 39].

Defendant argued that looking beyond the facts underlying his prior convictions, the facts surrounding the charged offense also do not show him to be dangerous [*Id*. at 43]. Instead, he was compliant with the officer during the traffic stop [*Id*.]. Defendant asserted the circumstances of the stop do show that he was using marijuana when he was stopped with a firearm [*Id*.]. But even so, courts have found that marijuana use alone, unconnected to firearm possession, does not support a finding of dangerousness under § 922(g)(3) [*Id*. (citing *United States v. VanOchten*, 150 F.4th 552, 562 (6th Cir. 2025) ("VanOchten is dangerous because he has demonstrated that he poses a clear risk of future harm to others if armed—he fired a rifle in a residential neighborhood in the direction of a propane tank while drunk and high.")))]. Finally, Defendant maintained that at the time of his arrest, he was homeless and living in his vehicle, and the Second Amendment protection is strongest when a person possesses a gun for self-defense in their home [*Id*. at 44].

Defendant also argued that the Court should not consider the DUI allegations from 2024 or the uncharged conduct [*Id*. at 42, 44]. Nor should it apply the presumption of violence attendant to drug trafficking to circumstances of simple possession during that uncharged conduct [*Id*. at 42]. Defendant argued that his prison infractions are of minimal significance because they were all punished merely with a deduction of four or five dollars from his prison account, rather than with time in segregation [*Id*.].

13

Finally, turning to his challenge to the *Williams* decision, Defendant argued that burglary convictions present heightened vagueness concerns [*Id*. at 45]. He asserted that like with the residual clause under the Armed Career Criminal Act, *Williams* requires the court to imagine an ordinary burglary and to determine what level of risk associated with that burglary makes it a violent offense [*Id*. at 45–46]. Defendant reasons that like the Armed Career Criminal Act's ("ACCA") residual clause, the test from *Williams* is impermissibly vague [*Id*.].

AUSA Johnson argued that Defendant erroneously substitutes the term "violent" for the term "dangerous," which is the focus of the *Williams* test [*Id*. at 47]. The Government maintains that *Williams*'s second category examines whether burglary poses a significant threat of danger, not whether violence ensued [*Id*.]. It contends, that in accord with *Williams*, burglary is deemed dangerous "because it creates the possibility of a violent confrontation between the offender and the occupant" and, thus, defendants committing burglary pose "a significant threat of danger" even without direct violence against another [*Id*. at 47–48]. AUSA Johnson asserted that Defendant is dangerous based upon his nine aggravated burglary convictions alone because burglaries create a serious potential for physical injury [*Id*. at 48–49].

The Government also argued that the narrative accounts of the aggravated burglaries show that Defendant forced open or kicked in the doors of the homes he burglarized [*Id*. at 49–50]. AUSA Johnson asserted that Defendant's breaking into residences in a forceful way created a risk of danger because he did not know who was home or whether the occupant possessed a weapon [*Id*. at 50]. AUSA Johnson also noted that Defendant's actions drew the attention of a neighbor[10]

---

[10] The MPD Incident Report from September 2, 2010, states that officers responded to a report of a "prowler" at the address [Exh. 3 p. 5]. The homeowner stated her home was burglarized earlier that day [*Id*.]. The report states neighbors saw the "suspect" and described him and his vehicle [Exh. 3].

and a jogger in two of the aggravated burglaries, thus, endangering others beyond the homeowners [*Id*. at 49–50; Exhs. 3 & 6].

The Government argued that when assessing dangerousness, *Williams* permits consideration of "judicially noticeable information" in addition to prior convictions [*Id*. at 53]. In this regard, AUSA Johnson asserted that Defendant's prison infractions show him to be dangerous [*Id*. at 52]. She maintained that regardless of how TDOC punished the infractions, "a reasonable person would agree that having two prison knives in TDOC is dangerous" [*Id*.]. She asserted that simply possessing a knife in prison creates a risk of danger because another prisoner could take it [*Id*. at 52–53].

The Government also contends the Court may consider Defendant's interactions with law enforcement that did not or have not resulted in arrests or convictions [*Id*. at 53]. AUSA Johnson emphasized that Defendant was arrested for DUI, which involved "totaling his car" and "driving twice over the legal limit" [*Id*.]. Regarding the facts underlying the present charge, she stated that an unloaded gun can be dangerous because even an unloaded gun incites fear in others [*Id*. at 54 (citing *United States v. Morris*, Nos. 98–4525 & 99–3695, 2000 WL 1359627, at *6 (6th Cir. Sept. 14, 2000) (discussing sentencing enhancement and observing that "even an unloaded gun can be considered dangerous" (citations omitted)))]. AUSA Johnson argued that the Court should give little weight to Ms. Davis's opinion on whether Defendant is dangerous both because she is biased as his girlfriend and because dangerousness is a question for the Court to decide [*Id*. at 55]. She also asserted that whether Defendant was homeless and living in his car is irrelevant to the dangerousness analysis [*Id*.].

In rebuttal, Ms. Rust argued that Ms. Davis, a nurse, would not have testified if she felt Defendant was a danger to her children [*Id*. at 56]. She stated that although *Williams* focuses on a

defendant's dangerousness, the three categories of crimes in *Williams* assess whether the defendant engaged in violence or is likely to engage in violence [*Id.* at 57]. Ms. Rust asserted that although someone is in the home during twenty-four percent of all burglaries, only 2.7 percent of all burglaries end with an injury [*Id.*]. She maintained that the risk attendant to a hypothetical burglary should not be elevated above the facts that actually occurred in this case [*Id.* at 58].

At the conclusion of the hearing, the Court granted Defendant's request to file post-hearing briefs [*Id.*].

### B. Post-hearing Briefing

Defendant argues that the single-count Indictment should be dismissed for failure to state an offense [Doc. 49 p. 1]. He contends that because most but not all crimes within *Williams*'s second category put the safety of another at risk, *Williams* leaves open the possibility that a defendant may commit burglary in a way that does not put another person's safety at risk [*Id.* at 6]. He argues that the facts underlying his prior convictions show he did not put anyone's safety at risk and, thus, the "presumption of dangerousness [for burglary] should fall away" [*Id.*]. He contends that because each of his prior burglary offenses was committed during the day in an unoccupied house, they did not risk injury to another person [*Id.* at 8]. And in the one instance where a passerby came upon Defendant, he fled rather than confront that individual [*Id.*]. Defendant argues that if the Court focuses on a hypothetical threat of danger from burglary, rather than the actual, nonviolent facts underlying Defendant's prior convictions, then it would in essence employ the categorical approach that was deemed vague in relation to the ACCA's residual clause [*Id.* at 8–11].

Defendant also argues that when assessing dangerousness using the *Williams* test, the Sixth Circuit has limited itself to the defendant's criminal record, which is comprised of prior convictions

and their underlying facts, and the facts surrounding the § 922(g) charge [*Id*. at 12]. Thus, he maintains that the Court should not consider uncharged conduct, such as the disciplinary sanctions and police reports submitted by the Government, nor should it consider the facts alleged in the pending DUI charge [*Id*.]. Defendant asserts that although *Williams* "'recognize[d] that courts may wish to consider information beyond criminal convictions when assessing a defendant's dangerousness,'" it left determination of what information was appropriate to another day and only considered prior convictions [*Id*. at 12–13 (quoting *Williams*, 113 F.4th at 657 n.12)]. Defendant contends that following *Williams*, no Sixth Circuit case has considered uncharged conduct or pending charges in assessing dangerousness [*Id*. at 13 (acknowledging consideration of a dismissed or pending DUI charge in *United States v. Goins*, 118 F.4th 794, 804 (6th Cir. 2024))].

Defendant asserts that even if the Court considers his prison violations or the uncharged incidents resulting in police reports, they do not support a finding of dangerousness [*Id*. at 12 n.3, 17]. He argues that the disciplinary infractions involved no violence, threat of violence, or risk to another's safety, and he was not the "primary aggressor" or the cause of the auto accident in the uncharged incidents [*Id*. at 12 n. 3, 17]. As for his pending DUI charge, Defendant asserts it too does not show him to be a danger because it is a singular instance of intoxicated driving, rather than a pattern, and although it resulted in an accident, no one was injured [*Id*. at 15–16]. He also asserts that consideration of the pending DUI charge is improper because it occurred after his April 10, 2024 arrest for the federal charge and, thus, does not show whether he was dangerous at the time he possessed a firearm [*Id*. at 16].

The Government responds in opposition asserting that the Sixth Circuit in *Williams* deemed burglary to show dangerousness because burglary poses a significant threat of danger [Doc. 52 p. 3]. Thus, "burglars are dangerous not because they always cause a violent confrontation but

17

because they created the risk of one" for the occupants of the residence and for others such as neighbors or officers who come to investigate the burglary [*Id*.]. It contends that Defendant nine convictions for aggravated burglary show him to be dangerous despite his protestation that he is not violent because Congress may disarm people who are dangerous—even if they are not necessarily violent" [*Id*. at 4].

The Government rejects Defendant's argument that *Williams*'s dangerousness test makes § 922(g)(1) constitutionally vague because only statutes, not judicial rulings, may be unconstitutionally vague [*Id*. at 5].

Finally, the Government argues that *Williams* expressly approved a court's consideration of information beyond criminal convictions to determine a defendant's dangerousness [*Id*. at 6]. It maintains that Defendant's arrest and pending charges for DUI after he wrecked his car with a blood-alcohol content of twice the legal limit and his possession of knives, methamphetamine, and marijuana while in prison show him to be a danger [*Id*.]. The Government maintains, however, that here, the Court need not consider information beyond Defendant's nine prior convictions for aggravated burglary, which alone provide compelling evidence of his dangerousness [*Id*. at 6–7].

In reply, Defendant agrees that the vagueness doctrine applies to the acts of Congress, not the judiciary, but contends the judicial interpretation of a statute can "inform the vagueness analysis" [Doc. 54 p. 3]. Thus, he maintains that in *Johnson v. United States*, 576 U.S. 591, 596 (2015), the Supreme Court found the residual clause of the ACCA to be unconstitutionally vague because the categorical approach, which was a judicial interpretation, rendered it vague [*Id*.]. Defendant argues the same is true for *Williams*'s dangerousness test, which violates due process because it fails to give fair notice of when a felon is prohibited from possessing a firearm, if the Court applies this "test by overlooking the actual, non-violent, low-risk facts of his specific

18

burglaries and instead concludes that all burglaries are risky" [*Id*. at 4]. He contends that the nine burglaries he committed occurred in 2010 before widespread acceptance of people working from home and "were each carefully crafted to occur when no one was home" [*Id*. at 7 (emphasis omitted)]. He argues that none of the cases cited by the Government based the dangerousness finding solely on the defendant's prior burglary convictions without consideration of other facts or convictions [*Id*. at 10–11].

Defendant also argues that while other cases may consider facts beyond the defendant's convictions themselves, "the Sixth Circuit has not yet decided what is and is not appropriate for consideration" in the dangerousness analysis [*Id*. at 11]. Thus, Defendant asserts that the Court should not rely on uncharged conduct or conduct that is the subject of pending charges as the "primary basis" for a dangerousness finding [*Id*. (emphasis omitted)].

Following receipt of Defendant's reply brief, the Court took the matter under advisement.

## II. ANALYSIS

In *United States v. Williams*, the Court of Appeals held "that § 922(g)(1) is constitutional on its face and as applied to dangerous people." 113 F.4th at 662–63. With respect to as-applied challenges, it explained that "for centuries," a disarmed felon "could demonstrate that their particular possession of a weapon posed no danger to peace." *Id.* at 657. "The relevant principle from our tradition of firearms regulation is that, when the legislature disarms on a class-wide basis, individuals must have a reasonable opportunity to prove that they don't fit the class-wide generalization." *Id.* at 661.

The undersigned begins with Defendant's argument that the Court of Appeals wrongly decided *United States v. Williams*. *Williams* is binding precedent on this Court, and "in the absence of Supreme Court precedent directly on point, a district court should decline to 'underrrule'

established circuit court precedent." *Johnson v. City of Detroit*, 319 F. Supp. 2d 756, 771 n.8 (E.D. Mich. 2004), *aff'd*, 446 F.3d 614 (6th Cir. 2006); *see also Hutto v. Davis*, 454 U.S. 370, 374 (1982) (observing that lower courts must follow precedent). Defendant identifies various Supreme Court authority in his argument [Doc. 27 pp. 1, 3–16], but *Williams* came after and relied on that authority. Hence, Defendant's arguments lack merit here and are for another court, another day.

Turning to whether Defendant is dangerous, the Court of Appeals in *Williams* explained that a defendant shoulders the burden to show that he is not dangerous. 113 F.4th at 657 ("[I]n an as-applied challenge to § 922(g)(1), the burden rests on [the defendant] to show he's not dangerous."). When a court determines whether a defendant is dangerous, it "must focus on each individual's specific characteristics" and must "consider[] the individual's entire criminal record— not just the predicate offense" to the § 922(g)(1) charge. *Id.* at 657, 659–60 ("The dangerousness determination will be fact-specific, depending on the unique circumstances of the individual defendant."). "Courts may consider any evidence of past convictions in the record, as well as other judicially noticeable information—such as prior convictions—when assessing a defendant's dangerousness." *Id.* at 660. "When assessing past convictions for evidence of dangerousness, '[courts are] not confined to the fact of conviction alone, but may consider how an offense was committed.'" *United States v. Crawford*, No. 23-5429, 2025 WL 3496999, at *3 (6th Cir. Dec. 5, 2025) (quoting *United States v. Morton*, 123 F.4th 492, 499 (6th Cir. 2024)), *cert. denied*, 2026 WL 490613 (Feb. 23, 2026).

The Court of Appeals further explained that "certain categories of past convictions are highly probative of dangerousness, while others are less so." *Williams*, 113 F.4th at 658. It set forth three categories of crimes and noted that a court need not "find 'categorical' matches to show a defendant is dangerous." *Id.* at 660 (citation omitted).

The first category "is crimes against the person." *Id.* at 658 (citation omitted). "This historical category was filled with dangerous and violent crimes like murder, rape, assault, and robbery." *Id.* (citation omitted). The Court of Appeals said that "[o]ffenses in this category speak directly to whether an individual is dangerous." *Id.* "[T]here is little debate that violent crimes are at least strong evidence that an individual is dangerous, if not totally dispositive on the question." *Id.* A defendant's burden to show otherwise is "extremely heavy." *Id.*

The second category includes crimes that "put someone's safety at risk, and thus, justify a finding of danger." *Id.* at 659. It includes crimes such as drug trafficking and burglary. *Id.* "These crimes do not always involve an immediate and direct threat of violence against a particular person." *Id.* "[W]hile not strictly crimes against the person, [these crimes] may nonetheless pose a significant threat of danger." *Id.*

The final category includes "crimes like mail fraud or making false statements." *Id.* (citations omitted). "Often, such crimes cause no physical harm to another person or the community." *Id.* While this category "is the most challenging to address," the Court of Appeals "trust[ed that] district courts will have no trouble concluding that many of these crimes don't make a person dangerous." *Id.*

Here, Defendant's criminal record shows he is dangerous. Defendant has two prior convictions for domestic assault, which fall within *Williams*'s first category for crimes against a person and, thus, are "strong evidence" that Defendant is dangerous. *Williams*, 113 F.4th at 658. Although Government did not rely on or present Defendant's domestic assault convictions as evidence of Defendant's dangerousness, *Williams* permits the undersigned to consider "any evidence of past convictions in the record[.]" *Id.* at 660. Moreover, "a court can accept prior convictions without an evidentiary hearing or jury fact finding." *Id*. at 662 (citing *Almendarez-*

21

*Torres v. United States*, 523 U.S. 224, 228–39 (1998)). Defendant's domestic assault convictions from 2006 and 2008 were listed in the Amended Pretrial Services Report and formed part of the basis for pretrial detention [Doc. 14-1 p. 2]. Thus, the undersigned considers these convictions in assessing Defendant's dangerousness. *See Williams*, 113 F.4th at 662 (considering the defendant's criminal record set out in his presentence report to which the defendant had not objected).

Additionally, and sufficiently, Defendant was convicted of nine aggravated burglaries in 2010 [Docs. 34-1 pp. 1–9]. These convictions fall within *Williams*'s second category of crimes that may not result in direct physical violence but "may nonetheless pose a significant threat of danger." 113 F.4th at 659. In *Williams*, the Court of Appeals observed that "burglary is dangerous because it 'creates the possibility of a violent confrontation between the offender and occupant.'" *Id.* (quoting *Taylor v. United States*, 495 U.S. 575, 577 (1990)). Each of Defendant Davis's convictions was "aggravated" because the burglary was committed within a home. *See* Tenn. Code Ann. § 39-13-1003 (aggravated burglary is the burglary of a "habitation"). Thus, these prior convictions show Defendant to be dangerous. Moreover, while serving a nine-year prison term for these offenses, Defendant possessed two handmade knives. This prison infraction and Defendant's pending DUI charge corroborate Defendant's dangerousness.

Defendant denies he is dangerous, arguing both the Court must consider the facts underlying his nine aggravated burglary convictions and his April 10, 2024 arrest and should not consider his prison infractions, uncharged conduct, or the pending DUI charge.

Defendant first argues that the facts underlying his aggravated burglary convictions, which show he committed these offenses during the daytime while no one was home and, thus, without actual violence, rebut the risk of danger from these convictions. According to Defendant, "[a]ll the

evidence [presented at the evidentiary hearing] shows that [his] actual offense conduct did not risk injury to another person" [Doc. 49 p. 8]. The undersigned disagrees.

Defendant claims his aggravated burglary offenses resulted in no actual violence "but *Williams* does not require violence to show dangerousness." *United States v. Taylor*, 165 F.4th 1029, 1035 (6th Cir. 2026) (assessing dangerousness from felony drug trafficking convictions) (citing *Williams*, 113 F.4th at 659); *see also Crawford*, 2025 WL 3496999, at *2 ("[A] specific instance of drug trafficking does not need to involve violence, or even an immediate threat of violence, to pose a significant threat of danger." (citing *Williams*, 113 F.4th at 659)). Here, the facts underlying Defendant's aggravated burglary convictions, such as can be derived from the police reports and judgments, show these convictions presented a significant threat of danger.

First and most importantly, Defendant burglarized homes. "Habitations are more likely to be occupied than, say, a vacant warehouse, thus making a violent confrontation much more likely amid a burglary." *United States v. Smith*, No. 1:23-cr-83, 2024 WL 4453270, at *2 (E.D. Tenn. Oct. 9, 2024) (finding a defendant's Tennessee convictions for aggravated kidnapping and aggravated burglary show dangerousness).

Second, in addition to the increased risk of danger from the location of the burglaries, Defendant entered the residences in a forceful manner. The police reports presented by Defendant show that he committed most of these burglaries by forcefully kicking in the door [*See* Exhs. 1–3, 6–9]. As noted by the Government [Doc. 52 p. 3], this method of entry increased the potential for violence if someone had been home.

23

Third, Defendant committed nine burglaries of homes within approximately six weeks.[11] This large number of offenses within a short period evince a "dangerous pattern" of behavior that "pose[s] a danger to public safety." *United States v. Goins*, 118 F.4th 794, 804 (6th Cir. 2024) (finding multiple DUI convictions evinced a "dangerous pattern" and threatened public safety); *see also United States v. Golden*, No. 3:23-cr-94, 2025 WL 268364, at *5 (N.D. Ohio Jan. 22, 2025) (finding the defendant's two convictions for illegal firearms possession show his willingness to flout gun laws and support a finding of dangerousness).

Defendant argues that his aggravated burglary convictions occurred more than a decade ago and, thus, do not show him to be dangerous now. But *Williams* permits consideration of a defendant's "'entire criminal record'" and, thus, does not foreclose consideration of older convictions. *United States v. Fellers*, No. 2:25-CR-29, 2025 WL 2736912, at *2 (E.D. Tenn. Sept. 25, 2025) (quoting *Williams*, 113 F.4th at 663) (citing *Smith*, 2024 WL 4453270, at *6); *see also Crawford*, 2025 WL 3496999, at *2 (observing the Sixth Circuit has not held that older convictions, including juvenile convictions, carry less weight in the dangerousness assessment). Moreover, after violating the terms of his probation, Defendant's suspended sentences were revoked in February 2014 [Doc. 34-1 p. 10], and he was discharged from prison after completing his sentence in January 2023 [*Id*. at 11]. Thus, Defendant spent a significant period of the time between his prior convictions and his current offense incarcerated. *See United States v. Pickett*, 757 F. Supp. 3d 813, 818 (M.D. Tenn. 2024) (determining that the defendant's lengthy intervening

---

[11]  Defendant's January 3, 2023 letter of discharge from TDOC states that he completed a thirteen-year sentence for nine aggravated burglary convictions and two attempted aggravated burglary convictions [Doc. 34-1 p. 11]. The Government did not present judgements for the two attempted aggravated burglary convictions, but they further support the above finding that Defendant engaged in a pattern of dangerous behavior.

time in prison and the repeated nature of his drug trafficking offenses diminished the impact of his argument that his convictions were over ten years old).

Finally, one of Defendant's aggravated burglary convictions created a risk of danger to an individual jogging past the residence. The police report from the September 20, 2010 burglary states that an individual jogging past the residence while the burglary was in progress heard the alarm, walked up the driveway to investigate, and saw the suspect run from residence and flee in a vehicle [Exh. 6 p. 5]. "The fact that an offender enters a building to commit a crime often creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate." *Taylor v. United States*, 495 U.S. 575, 588 (1990); *see also United States v. Oravets*, No. 24-3817, 2025 WL 2682632, at *2 (6th Cir. Sept. 19, 2025) (finding the defendant's prior conviction for breaking and entering showed him to be dangerous because of the potential for physical injury from this offense); *United States v. Vanhook*, 640 F.3d 706, 711 (6th Cir. 2011) ("[B]urglary-related offenses often involve the serious potential for physical injury." . Although Defendant dismisses this incident because he fled without injuring or even engaging the jogger, Defendant's commission of the burglary at this residence put a specific person at risk of danger even accepting Defendant's assertion[12] that his offenses were carefully crafted to occur when no one was home.

Thus, Defendant's nine prior burglary convictions show that he is dangerous based on the facts underlying those offenses—that they were burglaries of homes committed by forcefully

---

[12] The undersigned has no evidence that Defendant researched or surveilled the homes he entered to assure no one was home. Nor does the record support Defendant's argument that he did not carry a weapon while committing the offenses. Although the police reports stated no weapons were involved, the homeowners reporting the burglaries after the fact would not know if the perpetrator carried a weapon during the burglaries.

entering the residences, that Defendant engaged in a dangerous pattern of nine burglaries over approximately six weeks, and that the offenses created a serious risk of danger to others even though the homeowners were not home.[13]

Defendant argues that the circumstances surrounding his April 10, 2025 arrest for the instant charge show that he is not dangerous because he was compliant with the officer during the traffic stop and possessed an inoperable firearm for self-defense. He also argues that the mother of his child opined that he is not dangerous, despite knowing of his prior convictions and prison infractions, and that she entrusts him to watch her children while she is at work on the weekends. That Defendant did not react with violence when stopped and arrested and that his girlfriend finds him trustworthy, while commendable, do not overcome his dangerousness evidenced by his nine prior convictions for aggravated burglary and his two convictions for domestic assault.

Defendant also argues that the Court should not consider uncharged conduct such as the prison infractions and encounters with police occurring after the charged offense, nor should it consider his pending DUI charge. But *Williams* instructs that "[t]he dangerousness determination will be fact-specific, depending on the unique circumstances of the individual defendant." 113 F.4th at 660. And "[c]ourts may consider any evidence of past convictions in the record, as well as other judicially noticeable information—such as prior convictions—when assessing a defendant's dangerousness." *Id.*; *see United States v. Williams*, No. 24-1409, 2025 WL 1136326,

---

[13] The undersigned need not address Defendant's argument that a finding of dangerousness based on the fact of his prior convictions alone is akin to an impermissible, categorical approach [*See* Doc. 49 pp. 8–12]. *Williams* disclaims a categorical approach. 113 F.4th at 660 ("[I]n determining whether a defendant's past convictions are dangerous, we don't mean to suggest that courts facing as-applied challenges must find 'categorical' matches to show a defendant is dangerous. (comparing *Mathis v. United States*, 579 U.S. 500, 504 (2016)). And here, the undersigned bases the dangerousness determination on Defendant's actual conduct in perpetrating nine burglaries of homes within approximately six weeks, at least one of which involved a jogger coming to the property while the burglary was in progress.

at *2 (6th Cir. Apr. 17, 2025) (explaining that *Williams* permitted "'consider[ation of] information beyond criminal convictions,' such as a civil restraining order, but left open the question of which information is 'relevant'" (quoting *Williams*, 113 F.4th at 658 n.2)). "Judicially noticeable facts are facts 'not subject to reasonable dispute' because they are 'generally known' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *United States v. Jennings*, 754 F. Supp. 3d 763 (E.D. Mich. 2024) (quoting Fed. R. Evid. 201(b)) (discussing information relevant to the *Williams* test). And *Williams* left open the possibility for courts to "consider information beyond criminal convictions when assessing a defendant's dangerousness" providing as an example a civil restraining order. 113 F.4th at 657 n.12.

Here, the undersigned finds that Defendant's disciplinary infractions, particularly his possession of handmade prison knives, and his pending DUI charge in which he wrecked his vehicle, are indicative of his dangerousness. But the undersigned need not rely on these incidents to find Defendant is dangerous. Instead, Defendant's prior convictions for aggravated burglary along with the facts underlying his aggravated burglary convictions provide ample grounds to find Defendant is dangerous. Even more, Defendant was twice convicted of domestic assault. Considering his entire prior criminal record as discussed herein, Defendant fails to carry his burden of demonstrating he is not dangerous.

## III.    CONCLUSION

For the reasons stated, the undersigned respectfully **RECOMMENDS** that the District Judge **DENY** Defendant's Motion to Dismiss for Violation of the Second Amendment [**Doc. 27**].[14]

---

[14]    Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582, 587 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing

Respectfully submitted,

Jill E. McCook
United States Magistrate Judge

___

that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed. of Tchrs*, 829 F.2d 1370, 1373 (6th Cir. 1987).

28